**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALFREDO BLESS,

               Plaintiff,

v.                                        Case No. 3:24-cv-85-TJC-LLL

MS KING, et al.,

               Defendants.

_____

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system, initiated this action by filing a Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983 and a request to proceed as a pauper (Doc. 2) in the United States District Court for the Middle District of Florida, Tampa Division. On January 26, 2024, the Tampa Division transferred the case to the Jacksonville Division. See Doc. 3.

On April 16, 2024, the Court entered an order taking judicial notice of filings previously brought by Plaintiff in a Court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted: (1) 9:16-cv-81258-WPD (S.D. Fla.) (failure to state a claim); (2) 9:17-cv-81282-DMM (S.D. Fla.) (failure to state a claim); and (3) 9:23-cv-81554-WPD (S.D. Fla.) (frivolous and failure to state a

claim). <u>See</u> Doc. 9. The Court found that because Plaintiff has had three or more prior qualifying dismissals, he could not proceed <u>in</u> <u>forma</u> <u>pauperis</u> unless he "is under imminent danger of serious physical injury" at the time he files a complaint. 28 U.S.C. § 1915(g).

In the Complaint, Plaintiff raised several claims regarding the conditions of his confinement at the Reception and Medical Center between November 2023 and the date he filed the Complaint. <u>See</u> Doc. 1. He named twelve Defendants – Rickie Dixon; the Warden of R.M.C.; Doctor Carryion; Ms. King; Ms. Cotton; Selena Montemurro; Ms. Selean; Powell; Sergeant Shepherd; Chaplain at R.M.C.; Centurion, Inc.; and R.M.C.'s A.D.A. Coordinator. <u>See</u> <u>id.</u> at 1. He asserted claims of religious discrimination in the form of required shaving, denial of kosher meals, and prohibiting enjoyment of religious headwear. He also alleged claims under the Americans with Disabilities Act about the discriminatory denial of incontinence diapers, wipes, and pain medication. <u>See</u> <u>id.</u> at 4-7.

But of import to the imminent danger analysis, the Court focused on Plaintiff's claims that on November 22, 2023, officials admitted him to the R.M.C. hospital where his "'lymphedema pump – compression with legs sleeves' blood clot[] prevention machine" was confiscated by Defendants King, Cotton, Montemurro, and Shepard even though Plaintiff had a pass for the medical

machine. Id. at 3. According to Plaintiff, he is a documented disabled inmate with a spinal cord injury, and he uses the medical machine to prevent blood clots. He claims that Defendants "kn[e]w[] or should of know[n] that confiscating [his] medical machine would be placing [Plaintiff's] medical health and life in severe danger," violating his rights under the Eighth Amendment. According to Plaintiff's allegations, he apparently regained possession of his medical device because he claims that on January 11, 2024, Defendant R.M.C.'s A.D.A. Coordinator and Defendant Powell again "maliciously confiscated his lymphedema medical machine" because they were both angry with Plaintiff for comments he made during an A.D.A. meeting. Id. at 6. Plaintiff alleges the confiscation of his medical device "caus[ed] [Plaintiff's] medical health to deteriorate," violating his rights under the Eighth Amendment. Id. at 4.

Upon consideration of those assertions, the Court found that Plaintiff's allegations against Defendants King, Cotton, Montemurro, Powell, Shepherd, and R.M.C.'s A.D.A. Coordinator regarding the confiscation of his medical device or "lymphedema pump – total compression with legs sleeves" alleged an imminent danger of serious physical injury and granted his request to proceed in forma pauperis on those Eighth Amendment claims only. See Doc. 9. The Court then dismissed without prejudice Plaintiff's claims against Dixon, the

Warden of R.M.C., Carryion, Selean, Chaplain at R.M.C, and Centurion; and terminated them as Defendants in this case. Id.

Now, before the Court are Defendants Shawna Griffis (R.M.C.'s ADA Coordinator) and Shepard's Motion to Dismiss (Doc. 20), with exhibits (Docs. 20-1 through 20-4); as well as Defendants King, Cotton, Montemurro, and Harrison-Powell's Motion to Dismiss (Doc. 34).[1] Plaintiff filed responses in opposition to the Motions. See Docs. 30, 35. The Motions are ripe for review.

## II. Summary of Arguments

In their Motion, Defendants Griffis and Shepard seek dismissal of the Complaint because Plaintiff: (1) failed to allege imminent danger under § 1915(g); (2) failed to exhaust his administrative remedies; and (3) cannot seek monetary damages against Griffis and Shepard in their official capacities. See generally Doc. 20. In their Motion, Defendants King, Cotton, Montemurro, and Harrison-Powell seek dismissal because Plaintiff: (1) fails to allege imminent danger; (2) fails to state an Eighth Amendment claim; and (3) failed to exhaust his administrative remedies. See generally Doc. 34. Because the Court finds Plaintiff failed to exhaust his administrative remedies, it need not address Defendants' remaining arguments.

---

[1] The **Clerk of Court** shall update the docket to reflect that Shawna Griffis is Defendant R.M.C. (ADA) Coordinator and that "Harrison-Powell" is the proper surname for Defendant Powell.

4

### III. Exhaustion

Defendants King, Cotton, Montemurro, and Harrison-Powell join and adopt Defendants Griffis and Shepard's arguments about Plaintiff's failure to exhaust. See Doc. 34. Defendants collectively argue that Plaintiff failed to exhaust his administrative remedies because he did not comply with the required grievance procedures. See Doc. 20 at 14-15. They maintain that Plaintiff did not file any informal grievances regarding the November 22, 2023, or January 11, 2024, confiscation of his medical pump. Id. at 14. And, according to Defendants, although Plaintiff filed a direct formal grievance addressing his medical pump, when officials denied that formal grievance, Plaintiff failed to seek an appeal. Id. They also assert that while Plaintiff filed a direct emergency grievance appeal with the Secretary about his medical pump, the Secretary returned that appeal, finding it did not qualify as an emergency. Id. at 16.

In response, Plaintiff asserts he exhausted his administrative remedies. Doc. 30 at 5. But, according to Plaintiff, officials erroneously rejected his grievances and improperly found that his appeal did not qualify as an "emergency." Id. at 6. And thus, Plaintiff contends prison officials improperly processed his grievances, hindering his ability to exhaust and rendering the procedure unavailable. Id.; Doc. 35 at 3.

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in

applicable administrative rules and policies of the institution. <u>Woodford</u>, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

<u>Id.</u> at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In <u>Ross v. Blake</u>, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In <u>Ross</u>, the Court identified three circumstances in which an administrative remedy would be considered "not available." <u>Ross</u>, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials

7

may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). And "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. However, the ordinary three-step procedure does not always apply. For example, a prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner can bypass the informal grievance step, he must typically file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

An inmate may also skip the informal and formal grievance steps and file a direct emergency grievance with the Office of the Secretary, if the issue involves an emergency, reprisal, protective management, admissible reading material, release date calculations, banking issues, sexual abuse committed by

the warden, or HIPAA violations. Fla. Admin. Code r. 33-103.007(3)(a). When a prisoner files a direct emergency grievance with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(d).

Here, accepting Plaintiff's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process in which the Court considers the parties' disputes about exhaustion and makes findings of fact.

In resolving the disputed factual issues here, the Court finds that Plaintiff did not complete the administrative process in accordance with applicable grievance procedures set forth in rule 33-103 of the Florida Administrative Code. First, it is undisputed that Plaintiff did not complete the FDOC's typical three-step grievance process. Indeed, the evidentiary materials show that between November 22, 2023, and January 16, 2024 (the date Plaintiff filed the Complaint, <u>see</u> Doc. 1-1 at 1), Plaintiff filed seven informal grievances but none of those informal grievances contained allegations about the November 22, 2023, or the January 11, 2024, confiscation of his medical pump device. <u>See</u> Doc. 20-2 at 2.

Second, while Plaintiff may have attempted to exhaust his claims by bypassing the informal grievance step and filing a formal grievance directly with the Warden, that attempt was also insufficient. Notably, between November 22, 2023, and January 16, 2024, Plaintiff filed five formal grievances. See Doc. 20-2 at 10-15. Only one of those formal grievances contained allegations about Plaintiff's medical pump. Id. at 23. Specifically, on January 3, 2024, Plaintiff submitted to the Warden "emergency" formal grievance (log # 2401-209-001), in which he did not mention the November 22, 2023, or January 11, 2024, events but rather complained that on January 2, 2024, officials confiscated the medical machine cord for his lymphedema pump and asked that it be returned. Doc. 20-2 at 23. On January 10, 2024, the Warden responded to formal grievance (log # 2401-209-001), in pertinent part, as follows:

> Your formal grievance has been received, reviewed, and responded to.
>
> Review of records indicates that you do not currently have a valid pass in the EMR for a medical pump.
>
> . . . .
>
> Your Grievance is hereby denied.
>
> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form and providing attachments as required by 33-103.007, and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals.

12

Doc. 20-2 at 22. To complete the grievance process, Plaintiff was required to file his appeal by January 25, 2024. Fla. Admin. Code r. 33-103.11(c). According to the evidentiary material, the only grievance appeal Plaintiff submitted after January 10, 2024, was grievance appeal (log # 24-6-02247) submitted on January 16, 2024, which contained no allegations about his medical device but instead requested pain management and adequate medical care. Doc. 20-4 at 13; see also Turner, 541 F.3d at 1084 ("[I]f the appeal remedy was available to Turner, he should have pursued it and his failure to do so would bar his lawsuit under the PLRA's exhaustion requirement."). The Secretary returned grievance appeal (log # 24-6-02247) without action because Plaintiff failed to provide a copy of the formal grievance he sought to appeal. See Doc. 20-4 at 12. But even assuming appeal (log # 24-6-02247) was an appeal of formal grievance (log # 2401-209-001), that effort did not exhaust Plaintiff's administrative remedies because the Secretary responded to that appeal on January 24, 2024, eight days after Plaintiff filed the Complaint. See Doc. 20-4 at 12; see also Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." (emphasis added)).

Third, to the extent that Plaintiff tried to bypass the formal grievance step and file a direct emergency grievance with the Secretary to exhaust his claims, that effort was also insufficient. Between November 22, 2023, and January 16, 2024, Plaintiff filed three grievance appeals. Doc. 20-4 at 2. Of those three appeals, only one contained allegations about the confiscation of Plaintiff's medical pump. Id. at 5. Notably, on November 23, 2023, Plaintiff submitted an emergency grievance appeal (log # 23-6-39519), which contained allegations about the November 22, 2023, confiscation of Plaintiff's "lymphedema pump-blood flow regulator machine." Id. The Secretary returned the grievance appeal (log # 23-6-39519) without action, explaining as follows:

> This grievance is not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.
>
> Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

14

Based on the foregoing information, your appeal is returned without action.

Doc. 20-4 at 4. As such, the Secretary's office explicitly relied on a procedural defect—that Plaintiff did not properly follow the grievance process—to return without action his grievance appeal. See generally Whatley v. Smith, 898 F.3d 1072, 1084 (11th Cir. 2018) (holding that to preserve an exhaustion defense, the prison must "explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level"). And as stated, the record shows Plaintiff did not correct the procedural defect because he never properly finished the grievance process (by completing either the typical three-step process or the two-step process) in regards to the allegations in his Complaint. See Doc. 20-2 at 2.

Finally, Plaintiff contends that his administrative remedies were unavailable, relieving him of any obligation to complete the applicable grievance process. See Doc. 30 at 5-6; Doc. 35 at 2-4. In support of that argument, Plaintiff contends officials "improperly failed to process [his] grievances" and erroneously rejected grievance appeal (log # 23-6-39519) because they did not consider it to be an "emergency." Doc. 35 at 2-3. But the Secretary's rejection of grievance appeal (log # 23-6-39519) did not render the entire process unavailable. Indeed, in returning the grievance, the Secretary

explained that Plaintiff could properly exhaust his administrative remedies by returning to the institutional level and properly proceeding through the process. And because Plaintiff could have proceeded by re-filing the allegations at the institutional level, the PRLA still required him to do so.

Also, Plaintiff does not allege that prison officials withheld from him administrative remedy forms. Instead, the record shows that he had access to the necessary forms for submitting informal and formal grievances. And he does not allege that prison officials engaged in any threatening or retaliatory behavior that deterred him from filing any grievances. See Turner, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process).

For these reasons, Plaintiff did not properly exhaust the administrative remedies available to him. Thus, the Motions are due to be granted and Plaintiff's claims are dismissed for failure to exhaust.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      Defendants Shawna Griffis and Shepard's Motion to Dismiss (Doc. 20), as well as Defendants King, Cotton, Montemurro, and Harrison-Powell's Motion to Dismiss (Doc. 34) are **GRANTED to the extent** that the claims against Defendants Griffis, Shepard, King, Cotton, Montemurro, and Harrison-Powell are **DISMISSED without prejudice** for Plaintiff's failure to exhaust his administrative remedies.

2.      The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of January, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7
c:
Alfredo Bless, #S51819
Counsel of record

17